**H.E. BUTT GROCERY COMPANY,**
**Appellant,**

v.

**Vinnie BILOTTO, Appellee.**

**No. 04–94–00116–CV.**

Court of Appeals of Texas,
San Antonio.

July 10, 1996.

Rehearing Overruled Aug. 19, 1996.

Wade B. Shelton, Shelton, Lotz & Valadez, P.C., San Antonio, Wallace B. Jefferson, Crofts, Callaway & Jefferson, P.C., San Antonio, for appellant.

Les Mendelsohn, Ricky Poole, Speiser, Krause, Madole & Mendelsohn, Jackson, San Antonio, for appellee.

LÓPEZ, Justice.

Vinnie Bilotto recovered a judgment against H.E. Butt Grocery Company (HEB) for injuries Bilotto suffered as a result of a slip-and-fall accident. HEB contends, in its sole point of error, that the trial court erred in informing the jury of the legal effect of its answers by conditioning the damage question on finding Bilotto 50% or less negligent. We disagree with HEB and affirm the trial court's decision.

HEB specifically asserts that the trial court erred in informing the jury that a percent-responsibility finding in excess of 50% for Bilotto would preclude Bilotto from recovering any damages. Questions 1(a) and (b) in the court's charge requested that the jury determine whether Bilotto or HEB's negligence was a proximate cause of the accident. If the answer to both Questions 1(a) and 1(b) was "yes", the jury was instructed to continue with Questions 2(a) and (b), to determine the parties' respective percentages

of responsibility. The jury was further instructed:

> If, in answer to Question 1, you have answered "NO" for VINNIE BILOTTO, or if, in answer to Question No. 2 you have found that 50 percent or less of the negligence that caused the occurrence is attributable to VINNIE BILOTTO, then answer Question No. 3. Otherwise, do not answer Question No. 3.

Question No. 3 asked the jury to assess Bilotto's damages.

During the charge conference, HEB objected to the 50% bar instruction following Question 2. HEB argued that the instruction impermissibly informed the jury of the legal effect of its answer, thereby violating *Grieger v. Vega*, 153 Tex. 498, 271 S.W.2d 85 (1954), and Texas Rule of Civil Procedure 277. The objection was overruled by the trial judge.

While deliberating, the jury sent a note requesting that the trial judge "clarify the if/or situation at the end of question 2." The judge responded by asking the jury to clarify its question. The jury did not send out any further communication and returned a 10–2 verdict finding HEB and Bilotto each 50% negligent. Based on the jury's findings, the trial court rendered judgment awarding Bilotto $135,346.73, and HEB appealed.

■ Error in the charge is reviewed under an abuse of discretion standard. *Texas Dept. of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). To establish reversible error, the complaining party must show that the trial court acted arbitrarily, unreasonably, or without consideration of guiding rules and principles. *Downer v. Aquamarine Operators Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

Bilotto argues that the question and the 50% bar instruction were properly included in the charge. For support of his position, Bilotto directs us to excerpts from the transcript of a meeting of the Supreme Court Advisory Committee on the Rules of Civil Procedure (SCAC), the Texas Pattern Jury Charges, and the language of Rule 277.

■ Transcripts from SCAC meetings can be instructive in interpreting a particular rule. *See R.K. v. Ramirez*, 887 S.W.2d 836, 841 (Tex.1994); *Smith v. Christley*, 755 S.W.2d 525, 528–29 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The excerpts regarding an instruction on the 50% rule are mentioned in reference to a proposed amendment to Rule 277, allowing the court to inform the jury of the effect of its answers. Because this amendment did not become part of Rule 277, the excerpts are not pertinent to an interpretation of the Rule in its current form.

The question submitted to the jury followed Texas Pattern Jury Charge 80.01, Instruction 2:

> If, in answer to Question ___ [the negligence question], you have answered "No" for [plaintiff] or if, in answer to Question ___ [the percentage causation question], you have answered 50 percent or less for [plaintiff], then answer the following question. Otherwise, do not answer the following question.

2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.01 (1990).

■ Although we are aware that the Texas Pattern Jury Charges are not "law", they are heavily relied upon by both the bench and bar. *See, e.g., Gunn Buick, Inc. v. Rosano*, 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, no writ); *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 253 (Tex.App.—Beaumont 1994, no writ); *Baptist Memorial Hosp. Sys. v. Smith*, 822 S.W.2d 67, 72 (Tex.App.—San Antonio 1991, writ denied); *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 308 (Tex.App.—Eastland 1991, writ denied); *cf.* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES Introduction at xix (1987). The recommendations made in the Texas Pattern Jury Charges are based on what the committee "perceives the present law to be." 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES Introduction at xx (1987).

We were able to locate only one case in which a Texas court has expressly altered a Pattern Jury Charge. *See Keetch v. Kroger*

*Co.,* 845 S.W.2d 262, 266–67 (Tex.1992). In *Keetch,* the court recommended different instructions to define both negligence and ordinary care in a premises liability case. *Id.* We were also only able to locate one case in which a Texas appellate court has addressed Pattern Jury Charge 80.01. *See H.E. Butt Grocery Co. v. Paez,* 742 S.W.2d 824, 825 (Tex.App.–Corpus Christi 1987, writ denied). In *Paez,* the court held that the trial court could submit the damage question conditionally upon a liability finding of "at least fifty (50) percent or more." *Id.*

Rule 277 expressly prohibits the trial court from informing the jury of the effect of its answers. Tex.R. Civ. P. 277; *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *Grieger,* 271 S.W.2d at 87. However, Rule 277 also provides:

> In any cause in which the jury is required to apportion the loss among the parties the court shall submit a question or questions inquiring what percentage, if any, of the negligence or causation, as the case may be, that caused the occurrence or injury in question is attributable to each of the persons found to have been culpable. The court shall also instruct the jury to answer the question or questions without any reduction because of the percentage of negligence or causation, if any, of the person injured. The court may predicate the damage question or questions upon affirmative findings of liability.

▮ We find that the instruction given is not prohibited by Rule 277 because the Rule itself requires apportionment of the loss by percentages and allows the court to predicate damages on a finding of liability. *See Paez,* 742 S.W.2d at 825; *cf. Sanchez v. Excelo Bldg. Maintenance,* 780 S.W.2d 851, 855 (Tex.App.—San Antonio 1989, no writ). Furthermore, the trial court followed the wording of the appropriate Pattern Jury Charge, a widely accepted source throughout the legal community. We cannot say, therefore, that the submission of the 50% bar instruction amounted to "a clear failure by the trial court to analyze or apply the law." *See Walker,* 827 S.W.2d at 840. HEB's sole point of error is overruled and the judgment is affirmed.

DUNCAN, J., joined by RICKHOFF, J. (writing separately), and by GREEN, J., dissenting.

DUNCAN, Justice, dissenting.

This appeal turns upon the proper application of the appropriate standard of review for charge error. The question presented is whether the trial court abuses its discretion in submitting a Pattern Jury Charge instruction when a similar instruction has been held to be reversible error by the Texas Supreme Court. The majority holds that the trial court has discretion to submit such an instruction because it "follow[s] the wording of the appropriate Pattern Jury Charge, a widely accepted source throughout the legal community." In our view, this holding and its rationale are not only wrong but a dangerous perversion of the standard of review for charge error. Accordingly, we dissent.

### APPLICABLE LAW AND STANDARD OF REVIEW

The trial court's charge "shall submit such instructions ... as shall be proper to enable the jury to render a verdict." Tex.R. Civ. P. 277. "For an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and evidence." *European Crossroads' Shopping Center, Ltd. v. Criswell,* 910 S.W.2d 45, 53 (Tex.App.—Dallas 1995, writ denied). Additionally, an instruction "shall not ... advise the jury of the effect of their answers," except "incidentally." Tex.R. Civ. P. 277; *compare Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85, 87 (1954) *with Cannon Ball Motor Freight Lines v. Grasso,* 59 S.W.2d 337, 338–39 (Tex.Civ.App.—San Antonio 1933), *aff'd,* 125 Tex. 154, 81 S.W.2d 482, 487 (1935).

As two distinguished commentators have noted, "[u]ntil recently, great confusion existed regarding the standard of review for complaints about the court's charge." Roger Townsend, *State Standards of Review: Cornerstone of the Appeal, in* 6TH ANNUAL CONFERENCE ON STATE AND FEDERAL APPEALS 1–9, 20 (University of Texas School of Law 1996) [hereinafter Townsend]; *see also* W. Wendell Hall, *Revisiting Standards of Review in Civ-*

*il Appeals,* 24 St. Mary's L.J. 1041, 1108 (1993) [hereinafter Hall]. "This confusion was due to the existence of different standards for different aspects of charge practice, which courts sometimes simplistically fail to limit to their proper procedural context." Townsend at 20; Hall at 1108 (citing, *e.g., Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990) ("The standard for review of the charge is abuse of discretion, [which] occurs only when the trial court acts without reference to any guiding principles.")).

Fortunately, the confusion surrounding the abuse of discretion standard was dispelled by the supreme court's landmark decision in *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992), which explained that the abuse of discretion standard is a dual standard, and which aspect of the standard applies depends upon the type of issue involved. *See* Townsend, 8–9. If the ruling resolves an issue of fact, a reviewing court may not reverse unless "the trial court could reasonably have reached only one decision." *Walker,* 827 S.W.2d at 840. If, however, the ruling rests upon "determining what the law is or applying the law to the facts," the "trial court has no 'discretion'...." *Id.* Accordingly, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." *Id.*

*Walker,* of course, was an original proceeding and, to date, no Texas case has applied its dual abuse of discretion standard in the charge context. We agree with the majority, however, that it is appropriate to do so for two reasons. First, it would be incongruous, at best, for the abuse of discretion standard of review to mean one thing in original proceedings and another in appeals. *See* Hall at 1055. Second, *Walker*'s test permits the flexibility required for reviewing different types of charge error. *See* Townsend at 20–21; Hall at 1108–11.

In this case, the question presented by HEB is whether a 51% bar instruction impermissibly informs the jury of the effect of its answers in violation of Rule 277. Since this is a question of law, not at all dependent upon the resolution of factual matters, the standard of review should be the *de novo*

standard usually applied to questions of law. *See* Townsend at 21; Hall at 1110 (when complaint is that explanatory instruction is direct comment on the weight of the evidence in violation of Rule 277, standard of review is *de novo* ) (citing *City of Pearland v. Alexander,* 483 S.W.2d 244, 249 (Tex.1972); *American Bankers Ins. Co. v. Caruth,* 786 S.W.2d 427, 434–35 (Tex.App.—Dallas 1990, no writ)).

The majority effectively holds, however, that an abuse of discretion—error of law—cannot be shown when the trial court submits an instruction recommended by a Pattern Jury Charge committee. We disagree. "The Texas Pattern Jury Charges are nothing more than a guide to assist the trial courts in drafting their charges; they are not binding on the courts." *Keetch v. Kroger Co.,* 845 S.W.2d 276, 281 (Tex.App.—Dallas 1990) (citing *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 n. 7 (Tex.1981); *Texas Employers' Ins. Ass'n v. Lara,* 711 S.W.2d 224, 225 (Tex.1986)), *aff'd,* 845 S.W.2d 262 (Tex. 1992); *see also, e.g., Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 n. 4 (Tex. 1989) (noting that holding required change in PJC); *Roberts v. Grande,* 868 S.W.2d 956, 960–61 n. 1 (Tex.App.—Houston [14th Dist.] 1994, no writ) (disapproving PJC); *Universal Underwriters Ins. Co. v. Pierce,* 795 S.W.2d 771, 774 (Tex.App.—Houston [1st Dist.] 1990, no writ) (disapproving PJC on original submission but holding on rehearing that error was waived); *Mid–Continent Cas. Co. v. Whatley,* 742 S.W.2d 475, 482 (Tex.App.—Dallas 1987, no writ) (Hecht, J., concurring) ("point[ing] out that the majority in effect disapprove[s] the pattern jury charge....").

Like these courts and the committee members themselves, we recognize that the Texas Pattern Jury Charges represent only what the committee members "perceive[ ] the present law to be," and "the [c]ommittee may have erred in its perceptions...." 3 State Bar of Texas, Texas Pattern Jury Charges xxiv (1990). In our view, therefore, we must analyze de novo whether Instruction 2 to PJC 80.01 is a "proper" instruction under Texas law, in general, and Rule 277, in particular. *See* Tex.R. Civ. P. 277. It is simply not enough to say, as the majority does, that

an instruction has been approved by a Pattern Jury Charge committee.

## PROPRIETY OF A 51% BAR INSTRUCTION

In the early 1900s, Texas law was unsettled as to whether it was permissible for the court's charge to inform the jury of the legal effect of its answers. *See Southwestern Tel. & Tel. Co. v. Sheppard,* 189 S.W. 799, 800 (Tex.Civ.App.—San Antonio 1916, writ ref'd) (noting split among courts of civil appeals).[2] In 1935, however, this difference of opinion was resolved by Texas' highest court. *See Grasso,* 81 S.W.2d at 487.

In *Grasso,* the trial court's charge included an instruction informing the jury that it should answer the damages question only if it found that the defendant's negligence was a proximate cause of the plaintiff's injuries, and the plaintiff was not contributorily negligent.[3] This court ruled that this instruction was improper because it impermissibly informed the jury of the law of contributory negligence. *Grasso,* 59 S.W.2d at 339. The Texas Commission of Appeals affirmed. *Grasso,* 81 S.W.2d at 487. When the Commission's opinion was adopted by the Texas Supreme Court, *id.,* it became an opinion of that court and binding on this court until modified. *See Willis v. Maverick,* 760 S.W.2d 642, 644 n. 1 (Tex.1988).

In 1954, the supreme court refined the *Grasso* rule by permitting the conditioning of a damages question upon an affirmative finding of wrongful conduct. *Grieger,* 271 S.W.2d at 87. The basis for the court's holding was that "[a]ny juror of ordinary intelligence would have known the legal effect" of a negative liability finding. *Id.* The *Grieger* Court did not, however, overrule

*Grasso;* it instead distinguished its earlier opinion on the ground that the *Grasso* contributory negligence bar instruction "informed the jury of the effect of all its answers to issues of both primary negligence and contributory negligence." *Id.*

Like the instruction in *Grasso,* the 51% bar instruction at issue in this case informed the jury of the legal effect of finding Bilotto more than 50% responsible for his accident—a matter that a juror of ordinary intelligence would not know. Accordingly, if *Grasso* and *Grieger* remain the law, the trial court's submission of the 51% bar instruction constitutes an error of law and, therefore, an abuse of discretion. Bilotto argues, and the majority holds, however, that the instruction is permitted by the supreme court's 1988 amendment to Rule 277 permitting the trial court to "predicate the damage question or questions upon affirmative findings of liability." [4] We disagree. This amendment represents nothing more than a codification of *Grieger*'s holding; there is no indication in the historical record that it was intended to overrule *Grieger*'s distinction of *Grasso.*

In support of his argument, Bilotto relies primarily upon excerpts from the transcript of an SCAC meeting on November 1, 1985. We agree with Bilotto and the majority that these transcripts can be instructive in interpreting the rules. *See, e.g., R.K. v. Ramirez,* 887 S.W.2d 836, 841 (Tex.1994); *Smith v. Christley,* 755 S.W.2d 525, 528–29 (Tex. App.—Houston [14th Dist.] 1988, writ denied). We disagree, however, that the SCAC's meeting transcripts and minutes—when read as a whole—establish an intent to permit a 51% bar instruction, as Bilotto argues. We also disagree that "the excerpts are not pertinent to an interpretation of

---

**2.** TEXAS RULES OF FORM 70 (8th ed.) (before 1927, "writ ref'd" designation meant either that supreme court approved court of civil appeals' result but not necessarily its opinion or that the error was not preserved and presented to the supreme court).

**3.** " 'If in response to the foregoing question you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, *and if you have also answered that the plaintiff was not guilty of negligence contributing to the accident, then you will answer the following ques-*

*tion, otherwise you need not answer the following question.*' " *Grasso,* 59 S.W.2d at 338 (emphasis added).

**4.** The majority also seems to rely upon Rule 277's requirement of percentage causation findings in an appropriate case. However, as evidenced by the holding in *Grasso,* this requirement has nothing to do with, and certainly cannot be read to condone, a 51% bar instruction; it is merely a necessary consequence of the substantive law of comparative causation or, in its day, contributory negligence.

[Rule 277] in its current form," as the majority holds. To the contrary, the SCAC transcripts and minutes are quite illuminating and in fact obliquely suggest that the supreme court declined the SCAC's recommendation to modify the holdings in *Grasso* and *Grieger.*

At its November 1, 1985 meeting, the SCAC had before it the subcommittee's proposed amendment to Rule 277. As explained by the subcommittee chair, the proposed Rule 277 would effect many significant changes to the then-current charge practice, including mandated broad-form submission. Other proposed amendments would require the court to inform the jury of the effect of its answers, if requested, and to predicate the damages question upon affirmative liability findings. Specifically, the last paragraph of proposed Rule 277 provided:

> Upon the request of either party, the court shall instruct the jury as to the effect their answers to interrogatories will have upon the judgment to be entered in the case. The court shall also predicate the damage interrogatories upon affirmative findings of liability.

During the meeting, there was discussion both in favor of and against these proposed amendments, and, as indicated by Bilotto, several of the committee members suggested that conditionally submitting the damages question would permit a 51% bar instruction and thereby ensure that the jury did not waste its time answering the damages question in the absence of affirmative liability findings.

At one point during its November 1, 1985 meeting, the SCAC voted to recommend the proposed amendments to Rule 277. However, after a discussion of the federal practice, the committee instead returned the matter to the subcommittee for further study and drafting. For that reason, and because the remainder of the proposed amendments—including mandated broad-form submission—remained unresolved, proposed Rule 277 was

not forwarded to the supreme court at that time.

Rule 277 was again taken up by the SCAC at its March 7, 1986 meeting. Unfortunately the transcript of this meeting is unavailable. However, we know from the committee's minutes of this meeting that "Chief Justice Pope commented at length regarding the court advising the jury of the effect of its answers." Following these comments, the SCAC voted unanimously to delete the proposed amendment permitting the court to instruct the jury of the effect of its answers but to retain the proposed amendment codifying *Grieger, i.e.,* permitting the court to predicate the damages question upon affirmative liability findings. At the conclusion of this discussion, the SCAC voted to forward the proposed amendments to Rule 277 to the supreme court.

Given the unavailability of the transcript of the SCAC's March 7–8, 1986 meeting, we simply cannot know either the substance of Chief Justice Pope's comments or the intent of the committee or the supreme court with respect to this particular amendment to Rule 277. There is some indication that Chief Justice Pope believed that *Grieger* (and presumably its distinction of *Grasso* ) survived the 1988 amendments to Rule 277. *See* Jack Pope & William G. Lowerre, *Revised Rule 277—A Better Special Verdict System for Texas,* 27 Sw. L.J. 577, 589 (1973) (revised Rule 277 "accepts the premise that the design of the special verdict is to elicit a statement from jurors concerning a disputed fact and that the jurors' concern is not that of achieving a particular result," citing *Grieger* ). At best, however, the record is inconclusive. Under these circumstances, we should not impute either to the SCAC or, more importantly, to the supreme court an intent to overrule *Grasso* and *Grieger.* To the extent a contrary conclusion was reached in *H.E. Butt Grocery Co. v. Paez,* 742 S.W.2d 824 (Tex.App.—Corpus Christi 1987, writ denied), we would decline to follow it.[5]

---

**5.** In *Paez,* the trial court's charge did not condition the damages question upon affirmative liability findings. *Paez,* 742 S.W.2d at 825. However, in response to a question from the jury, the court supplemented its charge with an instruc-

tion that the jury was not to answer the damages question unless it found the defendant 50% or more negligent. *Id.* But later, in response to a second question, the court reversed itself and instructed the jury that, "contrary to the instruc-

In short, we would hold that, while *Grieger* permits conditioning the damages question upon affirmative liability findings, *Grasso* precludes informing the jury of the effect of its answers to comparative responsibility findings with a 51% bar instruction. Accordingly, the trial court committed an error of law and thus abused its discretion in submitting the instruction.

### HARM ANALYSIS

To rise to the level of reversible error, the submission of an erroneous instruction must be harmful under Rule 81(b)(1), TEX. R.APP. P. *E.g., Lone Star Gas Co. v. Lemond,* 897 S.W.2d 755, 756 (Tex.1995). The record in this case demonstrates that the parties' comparative responsibility was hotly contested; the 51% bar instruction expressly informed the jury that a difference of one percentage point in its comparative responsibility findings would determine whether Bilotto recovered damages; and the jury returned a 10–2 verdict finding Bilotto 50% responsible. Moreover, it is evident from the jury's question that before reaching this verdict it considered and was concerned about the meaning and import of the court's 51% bar instruction. Under these circumstances, we believe the erroneous instruction "amounted to such a denial of the rights of [HEB] as was reasonably calculated to cause and probably did cause rendition of an improper judgment...." TEX.R.APP. P. 81(b)(1); *see Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995) (recognizing that "a superfluous instruction would be more likely to influence the jury improperly" in "a close case").

### CONCLUSION

Neither this court nor the trial court has the power to overrule *Grasso* and *Grieger,* and certainly members of a Pattern Jury Charge committee cannot do so. That right and responsibility instead lies exclusively with the Supreme Court of Texas. Accordingly, we would sustain HEB's point of error, reverse the judgment below, and remand the case for a new trial.

RICKHOFF, Justice, dissenting.

Both the majority opinion and the dissenting opinion authored by Justice Duncan set forth the simple facts of this case and the dilemma presented in comparing the pattern jury charge instruction submitted in this case with TEX.R. CIV. P. 277. In my view, however, this case primarily presents an opportunity for the Texas Supreme Court to revisit the very basic question of whether juries should be advised of the effect of their answers in civil cases.

Since law school, I have viewed this prohibition an odd dichotomy in the only jurisdiction that allows complete jury sentencing in criminal cases. Thus, we ask jurors to resolve life's most difficult issues in criminal cases, but in civil cases, we shield them from knowing the effect of their answers to the submitted issues, apparently distrusting their integrity and demeaning their intelligence.

It should be evident from the substantial damage award given in the instant case that ten members of the jury meant to compensate Bilotto. Presently, our rules and case law thwart this intent; however, it is not for an intermediate court to alter this consistently applied precedent. Such an alteration would require an in-depth analysis and resolution of the implications of such a change beyond this case. Therefore, in spite of my personal view that this trial judge presented the issues rationally and in the manner I would advocate that the issues be presented, I join the dissent in holding that we cannot overrule the Texas Supreme Court's decision in *Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482, 487 (1935), and, therefore, would find the trial court abused its discretion in submitting the instruction at issue.

tion given in response to last question," the jury was to answer the damages question without regard to its answer to any other special issue. *Id.* In affirming, the Corpus Christi Court of Appeals stated that the trial court did not err in giving the jury the 51% bar instruction; however-

er, the court also stated, even if the instruction was erroneously given, the error was rendered harmless by the court's second instruction, and the error was not reversible in any event. *Id.* at 826.